DEBORAH ROBINSON, M.D.                     :
2501 W. Lehigh Avenue                      :
Philadelphia, PA 19132                     :
     and                                        :
TODD E. NIXON, M.D.                        :
MCP/Hahnemann University                   :
Cardiothoracic Associates                  :
3300 Henry Avenue                          :
Philadelphia, PA 19129                     :
     and                                        :
MCP Hahnemann University                   :
3300 Henry Avenue                          :
Philadelphia, Pa 19129                     :

## PRAECIPE

(Personal Injury - Medical Malpractice 2070)

TO THE PROTHONOTARY:

    Kindly issue the attached Summons in Civil Action against the above defendants.

LAW OFFICES OF JAMES E. COLLERAN

_Frank Colleran_

FRANCIS T. COLLERAN, ESQUIRE

GOVERNMENT
EXHIBIT
1
PENGAD-Bayonne, N.J.

# Commonwealth of Pennsylvania
## CITY AND COUNTY OF PHILADELPHIA

BEATRICE JEFFERSON

vs.

QUALITY COMMUNITY HEALTHCARE, INC.
QUALITY COMMUNITY HEALTHCARE FAMILY HEALTHCARE
CENTER
QCHC FAMILY CENTER
DANAIL VATEV, M.D. A/K/A DANIAL VATEV, M.D.
DEBORAH ROBINSON, P.A.
DEBORAH ROBINSON, M.D.
TODD E. NIXON, M.D.
MCP HAHNEMANN UNIVERSITY

COURT OF COMMON PLEAS

**FEBRUARY 2002** Term, 20 ____

No. _____ **000944** _____

**JURY FEE PAID**

To<sup>(1)</sup>    Quality Community Healthcare, Inc.
         Quality Community Healthcare Family Healthcare Center
         QCHC Family Center
         Danáil Vatev, M.D. A/K/A DANIAL VATEV, M.D.
         Deborah Robinson, P.A.
         Deborah Robinson, M.D.
         Todd E. Nixon, M.D.
         MCP Hahnemann University

You are notified that the Plaintiff<sup>(2)</sup>    Beatrice Jefferson
*Usted esta avisado que el demandante<sup>(2)</sup>*

Has (XXXX) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*

IN CIVIL ACTION



JOSEPH H. EVERS
*Prothonotary*

By _____    M. CORNAGLIA
                             PRO. PROTHY

                             FEB - 7 2002

Date _____    **ATTEST**

<sup>(1)</sup> Name(s) of Defendant(s)
<sup>(2)</sup> Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

Court of Common Pleas of Philadelphia County
Trial Division
# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**FEBRUARY 2002**

**000944**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Beatrice Jefferson | Quality Community Healthcare, Inc. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2511 North Hollywood Street<br>Philadelphia, PA  19132 | 2501 W. Lehigh Avenue<br>Philadelphia, PA  19132 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Quality Community Healthcare Family<br>Healthcare Center |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| JURY FEE PAID | 2501 W Lehigh Avenue<br>Philadelphia, PA  19132 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | QCHC Family Center |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 2501 W. Lehigh Avenue<br>Philadelphia, PA  19132 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 8 | ☐ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☒ Writ of Summons  ☐ Transfer From Other Jurisdictions |

AMOUNT IN CONTROVERSY | COURT PROGRAMS

☐ $50,000.00 or less
☒ More than $50,000.00

| ☐ Arbitration | ☐ Mass Tort | ☐ Commerce | ☐ Settlement |
|---|---|---|---|
| ☒☒ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| ☐ Other: | | | |

CASE TYPE AND CODE (SEE INSTRUCTIONS)

2M Medical Malpractice

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

N/A

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

N/A

JURY FEE PAID

| | IS CASE SUBJECT TO COORDINATION ORDER? | |
|---|---|---|
| | Yes | No |
| | ☐ | ☒ |
| | ☐ | ☒ |
| | ☐ | ☒ |

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Francis T. Colleran, Esquire | Law Offices of James E. Colleran<br>Francis T. Colleran, Esquire<br>21 S. 12th Street   13th Floor<br>Philadelphia, PA  19107 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| 215-972-8000 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 65821 | |

| SIGNATURE | DATE |
|---|---|
| *Frank Colleran* | |

01-101 (Rev 2/00)

# Civil Cover Sheet
## *(Supplemental Parties)*

For Prothon. Use Only (Docket Number)

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Beatrice Jefferson | Danail Vatev, M.D.  A|KA  DANIAL VATEV, M.D. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | 2501 W. Lehigh Avenue<br>Philadelphia, PA 19132 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | Debroah Robinson, P.A. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | 2501 W. Lehigh Avenue<br>Philadelphia, PA 19132 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | Deborah Robinson, M.D. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | 2501 W. Lehigh Avenue<br>PHiladelphia, PA 19132 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | Todd E. Nixon, M.D. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | MCP/Hahnemann University Cardiothoracic Assoc.<br>3300 Henry Avenue<br>Philadelphia, PA 19129 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | MCP Hahnemann University |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | 3300 Henry Avenue<br>Philadelphia, PA 19129 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |

| | | |
|---|---|---|
| **a** Control number **000081 JXC** | Void ☐ | OMB No. 1545-0008 |

**JXC**  000050  000081

| **b** Employer identification number **23-2157140** | **1** Wages, tips, other compensation **28623.31** | **2** Federal income tax withheld **6228.63** |
|---|---|---|
| **c** Employer's name, address, and ZIP code | **3** Social security wages **30930.97** | **4** Social security tax withheld **1917.72** |
| QUALITY COMMUNITY HEALTHCARE INC 2501 WEST LEHIGH AVE PHILADELPHIA PA 19132 | **5** Medicare wages and tips **30930.97** | **6** Medicare tax withheld **448.50** |
| | **7** Social security tips | **8** Allocated tips |
| **d** Employee's social security number **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** | **9** Advance EIC payment | **10** Dependent care benefits |
| **e** Employee's name, address, and ZIP code | **11** Nonqualified plans | **12** Benefits included in box 1 |
| DANAIL VATEV 3348 BOWMAN STREET PHILADELPHIA, PA 19129 | **13** See instrs. for box 13  E 2307.66 | **14** Other |

**15** Statutory employee ☐  Deceased ☐  Pension plan ☒  Legal rep. ☐  Deferred compensation ☒

| **16** State  Employer's state I.D. no. | **17** State wages, tips, etc. | **18** State income tax | **19** Locality name | **20** Local wages, tips, etc. | **21** Local income tax |
|---|---|---|---|---|---|
| PA  1351 3726 | 30930.97 | 866.08 | PHILADEL | 31169.61 | 1438.04 |

Form **W-2** Wage and Tax Statement **2000**

Copy D For Employer

Department of the Treasury—Internal Revenue Service

**For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.**

GOVERNMENT EXHIBIT 2

Form W-2 Wage and Tax Statement 1999    EMPLOYER REFERENCE COPY — DO NOT FILE.                0000

| A Control number | | Void | c Employer's name, address, and ZIP code | Department of the Treasury – Internal Revenue Service OMB No. 1545-0008 |
|---|---|---|---|---|

0026~E340  000244-000050

| 15 Statutory employee | Deceased | Pension plan | Legal rep. | Deferred compensation |
|---|---|---|---|---|
| | | X | | X |

c Employer's name, address, and ZIP code
QUALITY COMMUNITY HEALTHCARE
INC  GEORGETTE MC ALLISTER
2501 WEST LEHIGH AVE
PHILADELPHIA PA 19132

| 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|
| 97869.20 | 16734. |
| 3 Social security wages | 4 Social security tax withheld |
| 72600.00 | 4501. |
| 5 Medicare wages and tips | 6 Medicare tax withheld |
| 107869.06 | 1564. |
| 7 Social security tips | 8 Allocated tips |
| | |
| 9 Advance EIC payment | 10 Dependent care benefits |
| | |
| 11 Nonqualified plans | 12 Benefits included in Box |

b Employer's identification number
23-2157140

d Employee's social security number
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

| 13 See Instrs. for Box 13 | 14 Other |
|---|---|
| E       9999.86 | |

e Employee's name, address, and ZIP code
DANAIL V VATEV
3348 BOWMAN ST
PHILADELPHIA PA 19129

| 16 State | Employer's state I.D. No. | 17 State wages, tips, etc. | 18 State income tax | 19 Locality name | 20 Local wages, tips, etc. | 21 Local income tax |
|---|---|---|---|---|---|---|
| PA | 13513726 | 107869.06 | 3009.65 | PA PHILA | 107869.06 | 5013. |

| a Control number | | Void | OMB No. 1545-0008 | |
|---|---|---|---|---|
| 0244   2JM | | ☐ | 2JM | 0244 |

| b Employer's identification number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 23-2157140 | 88889.75 | 14959.82 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| QUALITY COMMUNITY HEALTH | 68400.00 | 4240.80 |
| 2501 03 W LEHIGH AVE | 5 Medicare wages and tips | 6 Medicare tax withheld |
| PHILADELPHIA, PA 19132 | 98812.63 | 1432.78 |
| | 7 Social security tips | 8 Allocated tips |

| d Employee's social security number | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|
| 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 | | |

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 12 Benefits included in box 1 |
|---|---|---|
| DANAIL V VATEV | | |
| 3348 BOWMAN ST | 13 See instrs. for Form W-2 | 14 Other |
| PHILA, PA 19129 | E 9922.88 | |

| 15 | Statutory employee ☐ | Deceased ☐ | Pension plan ☒ | Legal rep. ☐ | Deferred compensation ☒ |
|---|---|---|---|---|---|

| 16 State Employer's state I.D. no. | 17 State wages, tips, etc | 18 State income tax | 19 Locality name | 20 Local wages, tips, etc | 21 Local income tax |
|---|---|---|---|---|---|
| PA | 98812.63 | 2766.88 | PHILA R | 98812.63 | 4685.38 |

Form **W-2** Wage and Tax Statement **1998**
Copy D For Employer

Department of the Treasury–Internal Revenue Service
For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

| a Control number | | | 3 No. 1545-0008 2JM | | 0244 |
|---|---|---|---|---|---|
| 0244 2JM | | | | | |

| b Employer's identification number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 23-2157140 | 35653.42 | 6279.46 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| QUALITY COMMUNITY HEALTH | 42573.42 | 2639.55 |
| 2501 03 W LEHIGH AVE | 5 Medicare wages and tips | 6 Medicare tax withheld |
| PHILADELPHIA, PA 19132 | 42573.42 | 617.32 |
| | 7 Social security tips | 8 Allocated tips |

| d Employee's social security number | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|
| 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 | | |

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 12 Benefits included in box 1 |
|---|---|---|
| DANAIL V VATEV | | |
| 3348 BOWMAN ST | 13 See Instrs. for Form W-2 | 14 Other |
| PHILA, PA 19129 | E 6920.00 | |

15 ☐ Statutory employee ☐ Deceased ☒ Pension plan ☐ Legal rep. ☐ Hshld. emp. ☐ Subtotal ☒ Deferred compensation

| 16 State Employer's state I.D. No. | 17 State wages, tips, etc | 18 State income tax | 19 Locality name | 20 Local wages, tips, etc | 21 Local income tax |
|---|---|---|---|---|---|
| PA | 42573.42 | 1192.11 | PHILA R | 42573.42 | 2039.22 |

Form **W-2** Wage and Tax Statement **1997**

Copy D For Employer

Department of the Treasury–Internal Revenue Service
For Paperwork Reduction Act Notice,
see separate instructions.

| a Control number | | Void | | | | |
|---|---|---|---|---|---|---|
| 000080 JXC | | ☐ | OMB No. 1545-0008 | JXC | 000050 | 000080 |

| b Employer identification number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 23-2157140 | 46218.13 | 8922.96 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| QUALITY COMMUNITY | 48818.59 | 3026.75 |
| HEALTHCARE INC | 5 Medicare wages and tips | 6 Medicare tax withheld |
| 2501 WEST LEHIGH AVE | 48818.59 | 707.87 |
| PHILADELPHIA PA 19132 | 7 Social security tips | 8 Allocated tips |

| d Employee's social security number | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|
| 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 | | |

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 12 Benefits included in box 1 |
|---|---|---|
| DEBORAH ROBINSON | | |
| 5928 SPRING STREET | 13 See instrs. for box 13 | 14 Other |
| PHILADELPHIA,PA 19139 | E 2600.46 | |

| 15 Statutory employee | Deceased | Pension plan | Legal rep. | Deferred compensation |
|---|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ | ☒ |

| 16 State | Employer's state I.D. no. | 17 State wages, tips, etc. | 18 State income tax | 19 Locality name | 20 Local wages, tips, etc. | 21 Local income tax |
|---|---|---|---|---|---|---|
| PA | 1351 3726 | 48818.59 | 1366.96 | PHILADEL | 52006.47 | 2386.28 |

Form **W-2** **Wage and Tax Statement** **2000**

Copy D For Employer

Department of the Treasury—Internal Revenue Service
**For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.**


GOVERNMENT EXHIBIT
3
PENGAD-Bayonne, N.J.

Form W-2 Wage and Tax Statement 1999    EMPLOYER REFERENCE COPY - DO NOT FILE.

| a Control number 0026-E340 000299-000050 | | | | Void | c Employer's name, address, and ZIP code QUALITY COMMUNITY HEALTHCARE INC GEORGETTE MC ALLISTER 2501 WEST LEHIGH AVE PHILADELPHIA PA 19132 | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
|---|---|---|---|---|---|---|---|
| 15 Statutory employee | Deceased | Pension plan X | Legal rep. | Deferred compensation X | | 1 Wages, tips, other compensation 26342.27 | 2 Federal income tax withheld 5023 |
| b Employer's identification number 23-2157140 | | d Employee's social security number 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 | | | | 3 Social security wages 26919.23 | 4 Social security tax withheld 1668 |
| 13 See Instrs. for Box 13 E 576.96 | | 14 Other | | | e Employee's name, address, and ZIP code DEBORAH ROBINSON 5928 SPRING ST PHILADELPHIA PA 19139 | 5 Medicare wages and tips 26919.23 | 6 Medicare tax withheld 390 |
| | | | | | | 7 Social security tips | 8 Allocated tips |
| | | | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | | | | | 11 Nonqualified plans | 12 Benefits included in Box |
| 16 State PA | 17 State wages, tips, etc. 26919.23 | 18 State income tax 753.78 | 19 Locality name PA PHILA | 20 Local wages, tips, etc. 27394.03 | 21 Local income tax 1264. |



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
**BUREAU OF PRIMARY HEALTH CARE**

Public Health Service

Health Resources and
Services Administration
Rockville MD 20857



OCT 2 5 1993

OCT 7 1993

Marcella E. Lingham, Ed.D.
Quality Health Care, Inc.
2801 West Dauphin Street
Philadelphia, Pennsylvania 19132

Dear Dr. Lingham:

The Bureau of Primary Health Care (BPHC), in accordance with Section 224(h) of the
Public Health Service (PHS) Act, 42 U.S.C. 233(h) as added by the Federally Supported
Health Centers Assistance Act of 1992 (P.L. 102-501), deems the above named entity to
be an employee of the Federal Government for the purposes of Section 224. Under
Section 224(a), the remedy against the United States provided under the Federal Tort
Claims Act (FTCA) for medical and related functions performed by commissioned
officers or employees of the PHS while acting within the scope of office or employment,
shall be exclusive of any other civil action or proceeding. P.L. 102-501 extends this
"FTCA coverage" to the grantees that have been deemed covered under Section 224(h)
and certain of their officers, employees, and contractors, as specified below.

This action is based on the assurances provided on September 2, 1993, with regard to:
(1) implementation of appropriate policies and procedures to reduce the risk of
malpractice; (2) implementation of a system whereby professional credentials, references,
claims history, fitness, professional review organization findings, and licensure status of
its health professionals are reviewed and verified; (3) cooperation with the Department of
Justice (DOJ) in the defense of claims (including access to all pertinent documents and
patient information and records) and actions to assure against claims in the future; and
(4) cooperation with the DOJ in providing information related to previous malpractice
claims history.

All officers, employees, and full-time contractors (minimum 32.5 hours per week) of this
grantee who are physicians or other licensed or certified health care practitioners and
who are providing services under the scope of activities covered by the project funded
through its Section 329 (migrant health centers), Section 330 (community health centers),
Section 340 (health services for the homeless), or Section 340A (health services for
residents of public housing) grant(s) are also deemed to be employees of the Federal
Government for the purposes of Section 224, as are part-time contractors who are
licensed or certified providers of obstetrical services and whose individual medical



GOVERNMENT
EXHIBIT
4

FENCAD-Bayonne, N.J.

malpractice liability insurance coverage does not extend to services performed for this grantee. Subrecipients listed as eligible for FTCA coverage by the grantee will be deemed eligible only for carrying out those grant-related activities designated as being within the scope of their contract.

Accordingly, the Attorney General, through the DOJ, has the responsibility for the defense of the individual and/or grantee for malpractice claims approved for FTCA coverage. Please note that the applicability of the Act to a particular claim or case will depend upon the determination or certification, as appropriate, by the Attorney General that the individual or grantee is covered by the Act and was acting within the scope of employment. Such determination or certification is subject to judicial review. If the claim is subject to FTCA coverage, it must be reviewed initially by the PHS through an administrative claims process. Your cooperation in the handling of the claim (including providing the relevant medical records) will be necessary.

Section 224 is further amended by providing that hospital admitting privileges can not be denied if a covered health professional meets the appropriate professional qualifications, and agrees to abide by the hospital bylaws and the rules, and regulations of the medical staff. These individuals are thus afforded the same treatment as members of the National Health Service Corps with respect to hospital admitting privileges. Hospitals that fail to comply shall be in jeopardy of losing Medicare and Medicaid reimbursements.

The BPHC will be evaluating the implications of FTCA coverage for the payment of malpractice insurance costs under the terms of your grant. As a general rule, BPHC would not allow further charges to the grant for malpractice insurance for services subject to FTCA coverage. However, BPHC recognizes that some insurable risks will remain after the effective date of eligibility for FTCA coverage, including risks covered by malpractice insurance for non-covered providers. These remaining risks may require the purchase of private insurance by the grantee. Furthermore, it is expected that grantees will purchase "tail" insurance coverage for current providers with claims made instead of occurrences policies. Consequently, a grantee that has been deemed eligible for FTCA coverage should not cancel its current private malpractice insurance policies until these "gap" coverage requirements have been identified and policies secured.

The BPHC will consider allowing the grantee to continue to purchase its current malpractice insurance where the grantee can demonstrate that: (1) this is necessary to maintain the current scope of services and patient care activities and (2) the cost of such insurance is less than the cost of the insurable risks that remain after FTCA coverage is in effect, i.e., gap coverage.

Furthermore, BPHC will examine your request for charging to your grant the cost of "tail" insurance, if your previous malpractice coverage was for claims made, rather than occurrences. Here too, we will consider the extent to which the cost of tail insurance exceeds the cost of the present malpractice insurance, in deciding which form of insurance will be an allowable expense under the grant.

The effective date of eligibility for FTCA malpractice coverage is October 1, 1993. FTCA coverage is only applicable to acts or omissions occurring after this effective date and before January 1, 1996, for the scope of activities covered by the grant funded project.

For further information, please contact Martin Bree, J.D., FTCA Coordinator, Region III at (215) 596-6653.

Sincerely yours,

Marilyn H. Gaston, M.D.
Assistant Surgeon General
Director



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
BUREAU OF PRIMARY HEALTH CARE

Public Health Service

Health Resources and
Services Administration
Bethesda MD 20814

JUN 20 1996

Ms. Marcella Lingham
Executive Director
Quality Community Health Care
2501 West Leigh Avenue
Philadelphia, Pennsylvania 19132

Reference: Malpractice Liability Coverage

The Bureau of Primary Health Care (BPHC), in accordance with Section 224(h) of the Public
Health Service (PHS) Act, 42 U.S.C. 233(h) as amended by the Federally Supported Health
Centers Assistance Act of 1995 (Pub.L. 104-73), deems the above named entity to be an
employee of the Federal Government, effective June 23, 1996, for the purposes of Section 224.
Section 224(a) provides liability protection under the Federal Tort Claims Act (FTCA) for
damage for personal injury, including death, resulting from the performance of medical, surgical,
dental, and related functions and is exclusive of any other civil action or proceeding.
This "FTCA coverage" is applicable to deemed entities and their including officers, governing
board members, employees, and contractors who are physicians or other licensed or certified
health care practitioners working full-time (minimum 32.5 hours per week) or part-time
providing family practice, general internal medicine, general pediatrics, or
obstetrical/gynecological services.

Section 224 further provides that hospital admitting privileges cannot be denied on the basis of
having malpractice coverage under the FTCA, if a covered health care professional meets the
appropriate professional qualifications, and agrees to abide by the hospital bylaws and the rules,
and regulations of the medical staff. Moreover, managed care plans are required to accept FTCA
as meeting whatever malpractice insurance coverage requirements such plans may require of
contracting providers. Hospitals and managed care plans that fail to comply shall be in jeopardy
of losing Medicare and Medicaid reimbursements.

In addition, FTCA coverage is comparable to an "occurrence" policy without a monetary cap.
Therefore, any coverage limits that may be mandated by other organizations are met. For
example, a $1.0 million each claim/$3.0 million aggregate occurrence is met since FTCA would,
as appropriate, provide for the payment to a plaintiff of any damages awarded as a result of a
judgment or a settlement approved by the Attorney General, sums in excess of this amount.

For further information, please contact CAPT Marty Bree, Regional FTCA Coordinator, HRSA
Field Office, Philadelphia, Pennsylvania at (215) 596-6655.

Sincerely yours,

Marilyn H. Gaston, M.D.
Assistant Surgeon General
Director

# BPHC:

## Bureau of Primary Health Care



January 22, 1996

Dear Covered Entity:

The President signed into law the Federally Supported Health Centers Assistance Act of 1995 (Pub.L. 104-73) on December 26, 1995. It amends the Public Health Service Act to permanently extend and clarify malpractice coverage for health centers under the Federal Tort Claims Act.

The purpose of this communication is to advise you that your "deemed status" will remain in effect during the 180 day period beginning on December 25, 1995, as provided by Section 5(c) of Pub.L. 104-73. Please append this notice to your existing deeming letter.

We will provide you with application instructions regarding the process of renewing your deemed status in the near future.

If you have any further questions, you may contact Nathan Stinson, M.D., at (301) 594-4327.



Marilyn H. Gaston, M.D.
Assistant Surgeon General
Director

U.S. Department of Health & Human Services
Public Health Service

# HRSA

Health Resources & Services Administration



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
BUREAU OF PRIMARY HEALTH CARE

Public Health Service

Health Resources and
Services Administration
Bethesda MD 20814

JUN 2 0 1996

Ms. Marcella Lingham
Executive Director
Quality Community Health Care
2501 West Leigh Avenue
Philadelphia, Pennsylvania 19132

Reference: Malpractice Liability Coverage

The Bureau of Primary Health Care (BPHC), in accordance with Section 224(h) of the Public Health Service (PHS) Act, 42 U.S.C. 233(h) as amended by the Federally Supported Health Centers Assistance Act of 1995 (Pub.L. 104-73), deems the above named entity to be an employee of the Federal Government, effective June 23, 1996, for the purposes of Section 224. Section 224(a) provides liability protection under the Federal Tort Claims Act (FTCA) for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, and related functions and is exclusive of any other civil action or proceeding. This "FTCA coverage" is applicable to deemed entities and their including officers, governing board members, employees, and contractors who are physicians or other licensed or certified health care practitioners working full-time (minimum 32.5 hours per week) or part-time providing family practice, general internal medicine, general pediatrics, or obstetrical/gynecological services.

Section 224 further provides that hospital admitting privileges cannot be denied on the basis of having malpractice coverage under the FTCA, if a covered health care professional meets the appropriate professional qualifications, and agrees to abide by the hospital bylaws and the rules, and regulations of the medical staff. Moreover, managed care plans are required to accept FTCA as meeting whatever malpractice insurance coverage requirements such plans may require of contracting providers. Hospitals and managed care plans that fail to comply shall be in jeopardy of losing Medicare and Medicaid reimbursements.

In addition, FTCA coverage is comparable to an "occurrence" policy without a monetary cap. Therefore, any coverage limits that may be mandated by other organizations are met. For example, a $1.0 million each claim/$3.0 million aggregate occurrence is met since FTCA would, as appropriate, provide for the payment to a plaintiff of any damages awarded as a result of a judgment or a settlement approved by the Attorney General, sums in excess of this amount.

For further information, please contact CAPT Marty Bree, Regional FTCA Coordinator, HRSA Field Office, Philadelphia, Pennsylvania at (215) 596-6655.

Sincerely yours,

Marilyn H. Gaston, M.D.
Assistant Surgeon General
Director





## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CIVIL ACTION - LAW

| | |
|---|---|
| BEATRICE JEFFERSON | : |
| 2511 North Hollywood Street | :    JURY TRIAL DEMANDED |
| Philadelphia, PA 19132 | : |
|      vs. | : |
| QUALITY COMMUNITY HEALTHCARE, INC. | :    No.: 02-CV-2965 |
| 2501 W. Lehigh Avenue | : |
| Philadelphia, PA 19132 | : |
|      and | : |
| QUALITY COMMUNITY HEALTHCARE | : |
| FAMILY HEALTHCARE CENTER | : |
| 2501 W. Lehigh Avenue | : |
| Philadelphia, PA 19132 | : |
|      and | : |
| QCHC FAMILY CENTER | : |
| 2501 W. Lehigh Avenue | : |
| Philadelphia, PA 19132 | : |
|      and | : |
| DANAIL VATEV, M.D. | : |
| 2501 W. Lehigh Avenue | : |
| Philadelphia, PA 19132 | : |
|      and | : |
| DEBORAH ROBINSON, P.A. | : |
| 2501 W. Lehigh Avenue | : |
| Philadelphia, PA 19132 | : |
|      and | : |
| DEBORAH ROBINSON, M.D. | : |
| 2501 W. Lehigh Avenue | : |
| Philadelphia, PA 19132 | : |
|      and | : |
| TODD E. NIXON, M.D. | : |
| MCP/Hahnemann University | : |
| Cardiothoracic Associates | : |
| 3300 Henry Avenue | : |
| Philadelphia, PA 19129 | : |

FILED

JUN 2 5 200_

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

GOVERNMENT
EXHIBIT
5

     and                           :  
MCP Hahnemann University    :  
3300 Henry Avenue              :  
Philadelphia, Pa 19129      :  
     and                           :  
ALBERT J. GUERRATY, M.D.   :  
Medical College of Pennsylvania :  
3300 Henry Avenue              :  
Philadelphia, PA 19129

## CIVIL ACTION - COMPLAINT

1. Plaintiff Beatrice Jefferson is an individual, citizen and resident of the Commonwealth of Pennsylvania residing therein at 2511 North Hollywood Street, Philadelphia, PA 19132. Plaintiff brings these claims for recovery of monetary damages for the physical, mental and emotional injuries which are described herein.

2. Defendant Quality Community Healthcare, Inc. is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with offices therein at 2501 W. Lehigh Avenue, Philadelphia, PA 19132. At all times material to this Complaint this Defendant employed as its real and/or ostensible agents, servants and/or employees Vatev, M.D., Robinson, P.A., Robinson, M.D. and other physicians, residents, nurses, interns, health care providers and medical, non medical staff. This Defendant is liable vicariously for any and all negligent acts and/or omissions committed by any of its real and/or ostensible agents, servants and/or employees in their care and treatment of Plaintiff under and by virtue of the laws of agency of the Commonwealth of Pennsylvania.

3. Defendant Quality Community Healthcare Family Healthcare Center is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with offices therein at 2501 W. Lehigh Avenue, Philadelphia, PA 19132. At all times material to this Complaint this Defendant employed as its real and/or ostensible agents, servants and/or employees Vatev, M.D., Robinson, P.A., Robinson, M.D. and other physicians, residents, nurses, interns, health care providers and medical, non medical staff. This Defendant is liable vicariously for any and all negligent acts and/or omissions committed by any of its real and/or ostensible agents, servants and/or

employees in their care and treatment of Plaintiff under and by virtue of the laws of agency of the Commonwealth of Pennsylvania.

4.  Defendant QCHC Family Center is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with offices therein at 2501 W. Lehigh Avenue, Philadelphia, PA 19132.  At all times material to this Complaint this Defendant employed as its real and/or ostensible agents, servants and/or employees Vatev, M.D., Robinson, P.A., Robinson, M.D. and other physicians, residents, nurses, interns, health care providers and medical, non medical staff.  This Defendant is liable vicariously for any and all negligent acts and/or omissions committed by any of its real and/or ostensible agents, servants and/or employees in their care and treatment of Plaintiff under and by virtue of the laws of agency of the Commonwealth of Pennsylvania.

5.  Defendant Danail Vatev, M.D. a/k/a Danial Vatev, M.D. is a physician licensed and authorized to practice medicine in the Commonwealth of Pennsylvania who at all times material to this Complaint practiced at 2501 W. Lehigh Avenue, Philadelphia, PA 19132.  Upon information and belief, Defendant Vatev, M.D. is currently located at 5532 Alabama Street, Clarendon Hills, IL 60514.

At all times material hereto Defendant Vatev, M.D. was a treating physician of Plaintiff Beatrice Jefferson and in that capacity committed the liability imposing conduct complained of herein.

At all times material hereto Defendant Vatev, M.D. acted for himself and as the real and/or ostensible agent, servant and/or employee of Quality Community Healthcare, Inc., Quality Community Healthcare Family Health Care Center and QCHC Family Center.  Accordingly, any and all negligent acts and/or omissions committed by Vatev, M.D. in his care and treatment of Plaintiff

impose liability upon himself and upon the corporate Defendants under and by virtue of the laws of agency of the Commonwealth of Pennsylvania.

6. Defendant Deborah Robinson, P.A. is a physicians assistant licensed and authorized to practice medicine in the Commonwealth of Pennsylvania who at all times material to this Complaint practiced at 2501 W. Lehigh Avenue, Philadelphia, PA 19132.

At all times material hereto Defendant Robinson, P.A. was a treating physicians assistant of Plaintiff Beatrice Jefferson and in that capacity committed the liability imposing conduct complained of herein.

At all times material hereto Defendant Robinson, P.A. acted for herself and as the real and/or ostensible agent, servant and/or employee of Quality Community Healthcare, Inc., Quality Community Healthcare Family Health Care Center and QCHC Family Center. Accordingly, any and all negligent acts and/or omissions committed by Robinson, P.A. in her care and treatment of Plaintiff impose liability upon herself and upon the corporate Defendants under and by virtue of the laws of agency of the Commonwealth of Pennsylvania.

7. Defendant Deborah Robinson, M.D. is a physician licensed and authorized to practice medicine in the Commonwealth of Pennsylvania who at all times material to this Complaint practiced at 2501 W. Lehigh Avenue, Philadelphia, PA 19132.

At all times material hereto Defendant Robinson, M.D. was a treating physician of Plaintiff Beatrice Jefferson and in that capacity committed the liability imposing conduct complained of herein.

At all times material hereto Defendant Robinson, M.D. acted for herself and as the real and/or ostensible agent, servant and/or employee of Quality Community Healthcare, Inc., Quality Community Healthcare Family Health Care Center and QCHC Family Center. Accordingly, any and

all negligent acts and/or omissions committed by Robinson, M.D. in her care and treatment of Plaintiff impose liability upon herself and upon the corporate Defendants under and by virtue of the laws of agency of the Commonwealth of Pennsylvania.

8. Defendant Todd E. Nixon, M.D. is a physician licensed and authorized to practice medicine in the Commonwealth of Pennsylvania with offices therein at 3300 Henry Avenue, Philadelphia, PA 19129.

At all times material hereto Defendant Nixon, M.D. acted for himself and as the real and/or ostensible agent, servant and/or employee of MCP Hahnemann University. As a result, any and all liability imposing acts and/or omissions committed by Defendant Nixon, M.D. in his care and treatment of Plaintiff impose liability upon himself and upon this corporate Defendant under and by virtue of the laws of agency of the Commonwealth of Pennsylvania.

9. Defendant Medical College of Pennsylvania/Hahnemann University is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with offices therein at 3300 Henry Avenue, Philadelphia, PA 19129.

At all times material to this Complaint this Defendant owned, maintained, operated and controlled a full service hospital facility called the Medical College of Pennsylvania located at 3300 Henry Avenue, Philadelphia, PA 19129.

At all times material hereto this Defendant employed as its real and/or ostensible agents, servants and/or employees Nixon, M.D., Vatev, M.D., Robinson, P.A., Robinson, M.D., and other physicians, residents, nurses, interns and health care providers who participated in and rendered medical care to Beatrice Jefferson. This Defendant is liable vicariously for any and all negligent acts and/or omissions committed by any of its real and/or ostensible agents, servants and/or employees in their care and treatment of Plaintiff under and by virtue of the laws of agency of the

Commonwealth of Pennsylvania.

10. At all times material to this Complaint the aforementioned Defendants owed Plaintiff the duty to render medical care and surgical care in accordance with applicable standards of care.

11. By way of past medical history, Plaintiff underwent an aortic valve replacement in 1990.

12. Following the aortic valve prosthesis procedure, Plaintiff was maintained on long term coumadin therapy.

13. Beginning in 1997 and up until the time that Plaintiff Beatrice Jefferson was admitted to Medical College of Pennsylvania Hospital for surgery in late May 2000, Plaintiff was under the care of Defendant Vatev, M.D., Defendant Robinson, P.A. and/or Defendant Robinson, M.D. as well as other real and/or ostensible agents, servants and/or employees of QCHC Incorporated, Quality Community HealthCare, Inc. and Quality Community HealthCare Family HealthCare Center for management of her coumadin, assessment of anticoagulation blood levels, monitoring of INR ratios, PT/PTT levels and other hematologic components. Such treatment was necessary as a consequence of the aortic valve replacement.

14. On or about May 25, 2000, Plaintiff presented to the offices of Quality Community Healthcare, Inc., Quality Community Healthcare Family Healthcare Center complaining of chest pain, shortness of breath and neurologic symptoms suggestive of potential stroke. Plaintiff was evaluated by Robinson, P.A. and/or Robinson, M.D.. Robinson advised Plaintiff that she probably had the flu and provided no meaningful medical treatment.

15. Treatment with coumadin anticoagulation was absolutely necessary for this patient to prevent thrombus/clot formation on the prosthetic heart valve because clot can embolize and/or jam the valve in such a fashion so as to render it severely dysfunctional.

16. On or about May 26, 2000 Plaintiff was admitted to Medical College of Pennsylvania

with an admitting diagnosis of dyspnea on exertion and transischemic attack. Plaintiff was confined at MCP until discharge on June 9, 2000.

17. Upon admission to MCP, Plaintiff underwent transesophageal echocardiography which revealed an obstructive aortic valve mass consisting of thrombus with aortic stenosis and left ventricular dysfunction.

18. Upon admission to MCP, Plaintiff had grossly non-therapeutic levels of anticoagulation in her system.

19. On or about May 30, 2000 Plaintiff underwent a re-do aortic valve replacement. Surgery was performed by Albert J. Guerraty, M.D. in conjunction with Todd E. Nixon, M.D. and other real and/or ostensible agents, servants and/or employees of MCP.

20. During the course of this surgical procedure, Dr. Guerraty in conjunction with Todd E. Nixon, M.D. and other real and/or ostensible agents, servants and/or employees of MCP negligently and iatrogenically caused a tear in root of the aorta which required right coronary artery bypass. A vein was grafted from Plaintiff's left thigh in order to perform this bypass procedure. (earlier cardiac catheterization had revealed no evidence of coronary atherosclerosis.)

21. On the 9th postoperative day (June 9, 2000) Beatrice Jefferson was discharged from MCP Hahnemann. The decision to discharge her was made by Dr. Guerraty in conjunction with other real and/or ostensible agents, servants and/or employees of Medical College of Pennsylvania/Hahnemann University.

22. During the course of Plaintiff's admission to MCP she was diagnosed with stroke secondary to mechanical valve thrombus. Plaintiff was also diagnosed with visual dysfunction as a consequence of thrombus.

23. Plaintiff was discharged from MCP on June 9, 2000 despite the fact that she had a

steadily increasing leukocytosis and neutrophilia.

24. Prior to her discharge from MCP, Plaintiff demonstrated evidence of groin excoriations, chest pain, shortness of breath and lightheadedness, Dr. Nixon and other real and/or ostensible agents, servants and/or employees of MCP were aware of these potentially ominous findings. In addition, these Defendants were also aware of Plaintiff's complaints of sternal incision pain prior to her discharge.

25. On or about June 15, 2000 Plaintiff presented to the offices of the cardiothoracic surgeons (Guerraty and Nixon, M.D.) where she was seen, treated and evaluated by a Kathleen DiLeva, CRNP. At all times material this individual acted as the real and/or ostensible agents, servants, and/or employees of Guerraty and Nixon, M.D..

26. During the course of this office visit, Plaintiff was noted to have skin irritation around the sternal suture sights. In addition, Plaintiff's groin incision showed absolute evidence of dehiscence. Nurse DiLeva removed sternal retention sutures and cleansed the groin with peroxide. Nurse DiLeva failed to obtain vital signs, temperature, cultures on this occasion and failed to take any steps to rule out infection.

27. On or about June 21, 2000 Plaintiff presented to MCP with painful respirations, fever, and other symptoms compatible with chest wall infection.

28. Plaintiff was admitted to MCP where she was confined until discharge on July 8, 2000.

29. During the course of the above referenced admission, Plaintiff was diagnosed with bacteremia, endocarditis, chest wall infection and related problems. During this admission, Plaintiff required surgery for her sternal wound, drainage of sternal wound and debridement of inflammatory material.

30. From the time of Plaintiff's discharge from MCP until the present time, Plaintiff

continues to suffer devastating effects from her illness and injuries.

31. As mentioned earlier in this Complaint, prior to Plaintiff's May 26, 2000 admission to MCP, Plaintiff was under the care of Vatev, M.D., Robinson, P.A. and/or Robinson, M.D., and Quality Community HealthCare Center, Inc., QCHC Family Center, Quality Community HealthCare Family HealthCare Center for management of anticoagulation levels.

32. Between 1997 and May 2000, Plaintiff was seen on multiple occasions each month by Vatev, M.D. and/or Robinson, P.A/Robinson, M.D. for blood levels and examination in an effort to maintain her Coumadin/anticoagulation levels at proper levels.

33. Between 1997 and May 2000, especially in the months of February, March, April and May 2000, Plaintiff was grossly improperly anticoagulated. Defendants at all times improperly calculated Plaintiff's coagulation levels, failed to maintain Plaintiff on therapeutic levels of coumdin, failed to appreciate documented laboratory reports evidencing non therapeutic levels of Coumadin in Plaintiff's system and negligently exposed Plaintiff to the development and formation of thrombus/clot development.

34. Plaintiff's injuries are substantial, severe and permanent and were caused by the liability imposing conduct of all of the Defendants acting individually as well as jointly and/or severally.

35. At all times material to this Complaint Plaintiff acted with due care and diligence for her own personal health and safety. To the extent that this lawsuit criticizes events which occurred more than two years from the date upon which this lawsuit was filed, Plaintiff's invoke the discovery rule and assert that Plaintiff was not in a position to discover the fact that she was improperly anticoagulated until she unfortunately developed manifestation of this problem in the form of a dysfunctional aortic valve causing her to suffer thrombus, clot formation, stroke, congestive heart failure, visual disturbance and other related problems. These problems occurred on May 25, 2000

and therefore the statute of limitations on this case would be May 25, 2002.

36. The liability imposing conduct of the Defendants acting individually as well as jointly and severally is indicated in separate paragraphs beneath:

A. Quality Community HealthCare, Inc., Quality Community HealthCare Family HealthCare Center, QCHC Family Center, Danail Vatev, M.D., Deborah Robinson, P.A., Deborah Robinson, M.D.:

1. The corporate entities are vicariously liable for the negligent acts and/or omissions of the real and/or ostensible agents, servants and/or employees in their care and treatment of Plaintiff.

2. Failure at all times to maintain Plaintiff on proper levels of Coumadin.

3. Failing to appropriately monitor Plaintiff's Coumadin levels.

4. Negligently allowing Plaintiff to be maintained on nontherapeutic levels of Coumadin.

5. Failing at all times to properly anticoagulate Plaintiff.

6. Failing at all times to appropriately adjust Plaintiff's Coumadin dosage as a result of laboratory data indicating improper Coumadin levels.

7. Failing to appropriately perform, assess, interpret, react to and correct abnormalities in Plaintiff's INR ratios, PT/PTT times and levels, coumadin/anticoagulation levels.

8. Failing at all times to maintain Plaintiff on appropriate doses and dosages of coumadin.

9. Failing at all times to appropriately examine Plaintiff.

10. Failing at all times to respond with the appropriate medical significance to Plaintiff's complaints of shortness of breath, chest pain, neurologic dysfunction, difficulty in walking and other such symptoms and to therefore arrange for Plaintiff's admission to a hospital with full

investigation of coagulation profiles and the function of her aortic valve prostatic.

11. Failing at all times to perform standard and necessary and indicated physical and neurologic examinations of Plaintiff.

12. Failing at all times to monitor and measure Plaintiff's vital signs.

13. Failing to diagnose impending aortic valve dysfunction and to regard Plaintiff's symptoms prior to May 25, 2000 as indicative of congestive heart failure and mechanical valve dysfunction.

14. Negligently causing Plaintiff to experience congestive heart failure.

15. Negligently causing Plaintiff to develop massive clot formation in the aortic arch area.

16. Failing to perform the appropriate and required laboratory, hematologic and radiographic (radiologic) tests upon Plaintiff at all times.

17. Failing to refer Plaintiff to physicians who by interest training speciality and experience with the equipt to treat Plaintiff's hematologic problems, her anticoagulation problems, and her cardiac problems.

18. Failing at all times to establish an appropriate differential diagnosis.

19. Failing to perform and/or recommend interventional cardiology studies at the earliest possible time.

20. Failing to perform chest x-rays, catheterization of the heart, vascular imaging studies, interventional radiology and cardiology studies, assessment of Plaintiff's prostatic valve, and other such tests for Plaintiff.

21. Failing to recognize that Plaintiff was demonstrating symptoms of blood clotting disorder, thrombus, tia's and other manifestations of thromboembolic events prior to May 25, 2000.

22. Failing at all times to refer Plaintiff to the appropriate medical and surgical specialists.

23. Failing to admit Plaintiff to the hospital at any point prior to May 25, 2000.

B. Todd E. Nixon, M.D., Albert J. Guerraty, M.D.:

1. Negligently causing iatrogenic injury to Plaintiff's aorta and coronary structures during the course of her aortic valve re-do thus requiring Plaintiff to have to undergo coronary artery bypass with vein grafting from the groin area.

2. Negligently failing to protect and isolate vessels, arteries and structures of the heart during the course of Plaintiff's re-do aortic valve thus causing trauma to them which necessitated a coronary artery bypass.

3. Negligently failing to diagnose infection postoperatively (post aortic re-do).

4. Negligently and prematurely discharging Plaintiff from the hospital on June 9, 2000.

5. Failing to regard Plaintiff's postoperative (aortic re-do) complaints and evidence of fever, trauma leukocuitosis neutrophilia, groin excoriations, sternal pain, chest pain, incisional pain, abnormalities in vital signs as indicative of infection, sepsis and/or bacteremia and to order the appropriate medical tests, treatments and procedures as a result.

6. Failing to timely diagnose and treat infection.

7. Negligently causing Plaintiff to become bacteremic.

8. Negligent delayed recognition of infection with the result of Plaintiff required massive surgical procedures, developed endocarditis and suffered various cardiac and neurologic sequelae.

9. Vicarious liability for the CRNP who evaluated Plaintiff on June 15, 2000 and

who failed to properly assess Plaintiff's condition, failed to assess her vital signs, failed to regard her symptom complex and presentation as compatible with infection.

    C. MCP/Hahnemann University:

    1. Vicarious liability for the negligent acts and/or omissions of all of its real and/or ostensible agents, servants and/or employees in their care and treatment of Plaintiff.

**COUNT ONE - CAUSE OF ACTION**
**PLAINTIFF, BEATRICE JEFFERSON vs. ALL DEFENDANTS**

    37. Plaintiff incorporates by reference each and every one of the paragraphs of this Complaint as if each were stated separately herein.

    38. As a result of the liability imposing conduct of the Defendants Plaintiff has sustained irreparable and overwhelming pain and suffering, physical, mental and emotional.

    39. As a result of the liability imposing conduct of the Defendants Plaintiff has incurred medical bills, medical costs all of which are expected to continue.

    40. As a result of the liability imposing conduct of the Defendants Plaintiff has suffered a loss of earnings and earning capacity.

    41. As a result of the liability imposing conduct of the Defendants Plaintiff has developed massive physical injuries including but not limited to congestive heart failure, stroke, neurologic dysfunction, diabetes, massive and irreparable injury to her aortic valve, coronary structures, coronary arteries, has required replacement of aortic valve, surgical coronary bypass, development massive and systemic infections, has suffered an overall systemic deterioration is gait impaired, has developed massive decreased left ventricular function and overall cardiac output, is forever cardiac impaired and will suffer further deterioration in her cardiac condition, has suffered vision loss, hearing loss, damage to her multisystem organs, has developed problems with swallowing and

speech, and has suffered an overall deterioration of her bodily systems and functions.

42. As a result of the liability imposing conduct of the Defendants Plaintiff suffers from depression.

43. As a result of the liability imposing conduct of the Defendants Plaintiff suffers from embarrassment and humiliation.

44. As a result of the liability imposing conduct of the Defendants Plaintiff suffers from a loss of life's pleasures.

45. As a result of the liability imposing conduct of the Defendants Plaintiff suffers in with her daily habits and pursuits and inconvenience.

46. As a result of the liability imposing conduct of the Defendants Plaintiff suffers from mental anguish.

47. As a result of the liability imposing conduct of the Defendants Plaintiff is permanently disabled.

48. As a result of the liability imposing conduct of the Defendants Plaintiff suffers emotional distress.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of fifty thousand dollars ($50,000.00), plus costs and interest.

LAW OFFICES OF JAMES E. COLLERAN

BY: _____
FRANCIS T. COLLERAN, ESQUIRE
Attorney for Plaintiff

## **VERIFICATION**

I am the plaintiff in this action and that the facts contained therein are true and correct to the best of my knowledge, information, and belief.  This verification is made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsifications to authorities.

Beatrice Jefferson 6/25/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Beatrice Jefferson,                      )
                                         )
                                         )
        Plaintiff,                       )
                                         )
            v.                           )        Case No.
                                         )
                                         )
Quality Community Health Care, Inc.,)
Quality Community Health Care            )
 Family Health Care Center,              )
QCHC Family Center,                      )
Danail Vatev, M.D.,                      )
a/k/a Danial Vatev, M.D.,                )
Deborah Robinson, P.A.,                  )
Deborah Robinson, M.D.,                  )
Todd Nixon, M.D.,                        )
and MCP Hahnemann University             )
                                         )
                                         )
        Defendants.                      )
                                         )

DECLARATION OF
RICHARD G. BERGERON


    1.  I am an Attorney in the Division of Business and

Administrative Law, Office of the General Counsel, Department of

Health and Human Services (the "Department").  As such, I am

familiar with the official records of administrative tort claims

maintained by the Department as well as with the system by which

those records are maintained.


GOVERNMENT
EXHIBIT
6
PENGAD-Bayonne, N. J.

2. The Department's Program Support Center has a Claims Branch that maintains in a computerized database a record of all administrative tort claims filed with the Department, including those filed with respect to federally supported health centers that have been deemed to be eligible for Federal Tort Claims Act malpractice coverage.

3. As a consequence, if a tort claim had been filed with the Department with respect to Quality Community Health Care, Inc., or its employees, a record of that filing would be maintained in the Claims Branch's database.

4. I caused a search of the Claims Branch's database to be conducted and found no record of an administrative tort claim filed by Beatrice Jefferson or her authorized representative relating to Quality Community Health Care, Inc., Danail Vatev, M.D., or Deborah Robinson, P.A.

5. I have also reviewed official agency records and have determined that Quality Community Health Care, Inc., was first deemed eligible for Federal Tort Claims Act malpractice coverage effective October 1, 1993, and that its deemed status has continued without interruption since that date. Copies of the notifications by an Assistant Surgeon General, Department of Health and Human Services, to Quality Community Health Care, Inc., are attached to this declaration as Exhibit 1.

6. Official agency records also indicate that Danail Vatev, M.D., and Deborah Robinson, P.A., were employees of Quality Community Health Care, Inc., when Beatrice Jefferson received treatment from them.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated at Washington, D.C., this _____ day of _____, 2002.

RICHARD G. BERGERON
Attorney, Litigation Branch
Business and Administrative Law Division
Office of the General Counsel
Department of Health and Human Services